[Cite as *State v. Rice*, 2014-Ohio-4285.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# ASHTABULA COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2012-A-0062** |
| BRANDON J. RICE, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Ashtabula County Court of Common Pleas.
Case No. 2007 CR 392.

Judgment: Affirmed.

*Nicholas A. Iarocci*, Ashtabula County Prosecutor, and *Shelley M. Pratt*, Assistant Prosecutor, Ashtabula County Courthouse, 25 West Jefferson Street, Jefferson, OH 44047-1092 (For Plaintiff-Appellee).

*Joseph R. Klammer*, The Klammer Law Office, Ltd., The Historic Mentor Center School, 7482 Center Street, Unit 6, Mentor, OH 44060 (For Defendant-Appellant).

TIMOTHY P. CANNON, P.J.

{¶1} Appellant, Brandon J. Rice, appeals from the November 28, 2012 judgment of the Ashtabula County Court of Common Pleas, overruling his motion for new trial without an evidentiary hearing. For the reasons that follow, the judgment of the trial court is affirmed.

{¶2} In 2009, a jury convicted appellant of murder, in violation of R.C. 2903.02(B), in connection with the murder of his four-month-old son, Braydon Rice.

Appellant was found guilty, despite his contention that Braydon was killed when appellant tripped over a walker toy and fell on top of the baby. Appellant was sentenced to an indefinite prison term of 15 years to life. This court affirmed appellant's conviction. *State v. Rice*, 11th Dist. Ashtabula No. 2009-A-0034, 2010-Ohio-1638.

{¶3} On July 20, 2010, appellant filed a petition for postconviction relief. On September 3, 2010, the trial court dismissed appellant's petition as untimely. This court then affirmed the judgment of the trial court denying appellant's petition for postconviction relief. *State v. Rice*, 11th Dist. Ashtabula No. 2010-A-0046, 2011-Ohio-3746.

{¶4} On February 28, 2012, appellant filed a motion for a new trial, a motion for a status conference, and a motion for an evidentiary hearing and to allow the taking of the deposition of Dr. Joseph Felo, the supervising forensic pathologist at the Cuyahoga County Medical Examiner's Office. On March 9, 2012, appellee filed a response in opposition to appellant's motion for new trial. In its response, appellee argued that appellant's motion for new trial should be overruled because appellant failed to obtain leave of court to file his motion outside of the 120-day window permitted by Crim.R. 33. Appellee also argued that appellant failed to demonstrate, by clear and convincing evidence, that appellant was unavoidably prevented from discovering the new evidence.

{¶5} On April 11, 2012, appellant filed a reply to appellee's opposition to appellant's motion for a new trial. Appellant's reply also included a motion for leave to file a motion for new trial. On September 26, 2012, the trial court granted appellant's request for leave to file a supplement to his motion for new trial. On October 12, 2012, appellant filed a supplement to his motion for a new trial and a renewed motion for an

2

order allowing the deposition of Dr. Felo. In his motion, appellant alleged that he was unavoidably prevented from discovering and producing the evidence at trial or within 120 days of the verdict, as set forth in Crim.R. 33(B). Appellant's newly-discovered evidence was Dr. Felo's opinion that Braydon's injuries were not caused by "one strike" and that the fractures "were more likely the result of a crushing type impact than a strike."

{¶6} On November 28, 2012, the trial court overruled appellant's motion for a new trial without first holding an evidentiary hearing. The trial court overruled appellant's motion because appellant failed to prove by clear and convincing evidence that he was unavoidably prevented from discovering "Dr. Felo's participation in the autopsy, or his potential opinion on the matter." Additionally, the trial court found that even if "Dr. Felo's opinion fully supported the defense theory in this matter; there is no strong possibility that Dr. Felo's testimony would change the result of a new trial." From this judgment entry of the trial court, appellant filed the instant appeal, asserting the following assignment of error:

{¶7} "The trial court erred in denying defendant's motion for new trial."

{¶8} Under this assignment of error, appellant presents four issues: (1) he was unavoidably prevented from discovering new evidence within 120 days of the verdict; (2) the "newly discovered evidence" entitles him to a new trial; (3) he is entitled to a new trial because incarcerating an innocent person violates the Eighth Amendment to the United States Constitution; and, in the alternative, (4) he is entitled to have his conviction modified, pursuant to Crim.R. 33(A)(4) and R.C. 2945.79(D), to state a conviction for reckless homicide in violation of R.C. 2903.041. As they are all

3

interrelated to appellant's motion for a new trial, issues one, two, and three are considered together.

{¶9} "With regard to a motion for new trial, the allowance or denial is within the sound discretion of the trial court and will not be disturbed absent an abuse of discretion." *State v. Haynes*, 11th Dist. Ashtabula No. 2012-A-0032, 2013-Ohio-2401, ¶68, citing *State v. Hill*, 64 Ohio St.3d 313, 333 (1992). Regarding this standard, the term "abuse of discretion" is one of art, connoting the trial court's "'failure to exercise sound, reasonable, and legal decision-making.'" *State v. Beechler*, 2d Dist. Clark No. 09-CA-54, 2010-Ohio-1900, ¶62, quoting *Black's Law Dictionary* 11 (8th Ed.2004).

{¶10} Crim.R. 33(A) sets forth the grounds on which a trial court may grant a motion for a new trial. The rule states, in pertinent part:

> A new trial may be granted on motion of the defendant for any of the following causes affecting materially his substantial rights:
>
> * * *
>
> (6) When new evidence material to the defense is discovered, which the defendant could not with reasonable diligence have discovered and produced at the trial. When a motion for a new trial is made upon the ground of newly discovered evidence, the defendant must produce at the hearing on the motion, in support thereof, the affidavits of the witnesses by whom such evidence is expected to be given, and if time is required by the defendant to procure such affidavits, the court may postpone the hearing of the motion for such length of time as is reasonable under all the circumstances of the case. * * *

{¶11} Crim.R. 33(B) dictates the procedure a trial court is bound to follow in considering a motion for a new trial on the basis of newly-discovered evidence:

> Motions for new trial on account of newly discovered evidence shall be filed within one hundred twenty days after the day upon which the verdict was rendered, or the decision of the court where trial by jury has been waived. If it is made to appear by clear and

4

convincing proof that the defendant was unavoidably prevented from the discovery of the evidence upon which he must rely, such motion shall be filed within seven days from an order of the court finding that he was unavoidably prevented from discovering the evidence within the one hundred twenty day period.

{¶12} This court has previously explained the mechanics of Crim.R. 33 in *State v. Elersic*, 11th Dist. Geauga No. 2006-G-2740, 2007-Ohio-3371. In that case, we stated:

> The foregoing rule anticipates a two-step process where the motion for new trial is made outside the permissible timeframe for filing the motion. First, the trial court must find the party was unavoidably prevented from filing his motion within the prescribed window set forth in Crim.R. 33(B). The party must then file his or her motion within seven days of the trial court's determination. 'Crim.R. 33 does not specify the procedure by which the initial order is to be obtained.'

(Citations omitted.) *Id.* at ¶23, quoting *State v. Dawson*, 9th Dist. Summit No. 19179, 1999 Ohio App. LEXIS 3264, *5 (July 14, 1999).

{¶13} The Supreme Court of Ohio has held that a court should allow a new trial where the new evidence "(1) discloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence." *State v. Petro*, 148 Ohio St. 505 (1947), syllabus. Additionally, Crim.R. 33 should not be "interpreted so technically as to prevent an untimely motion that does not specifically request leave[.]" *State v. Franklin,* 7th Dist. Mahoning No. 09MA96, 2010-Ohio-4317, ¶17; *State v. Gray*, 8th Dist. Cuyahoga No. 94282, 2010-Ohio-5842, ¶21.

**{¶14}** Appellant contends that the trial court abused its discretion when it overruled his motion for a new trial without first holding a hearing. "A defendant is entitled to a hearing on his motion for leave if he submits 'documents that on their face support his claim that he was unavoidably prevented from timely discovering the evidence' at issue." *Gray*, *supra*, at ¶20, quoting *State v. York*, 2d Dist. Greene No. 99-CA-54, 2000 Ohio App. LEXIS 550 (Feb. 18, 2000), *3-4; *see also State v. McConnell*, 170 Ohio App.3d 800, 2007-Ohio-1181, ¶19 (2d Dist).

**{¶15}** To begin, we note that the jury verdict in this case was rendered on May 18, 2009. Appellant did not file his motion for new trial until February 28, 2012. This is significantly beyond the 120-day prescribed time period. As such, appellant was required to make a showing by clear and convincing proof that he was unavoidably prevented from discovering this evidence. *See* Crim.R. 33(B). We agree with the trial court that appellant was not unavoidably prevented from discovering Dr. Felo's testimony.

**{¶16}** The trial court found that appellant failed to prove by clear and convincing evidence that he was unavoidably prevented from filing his motion within the prescribed window set forth in Crim.R. 33(B). In reaching this conclusion, the trial court relied on the fact that Dr. Felo was identified as a potential state's witness in appellee's response to appellant's discovery request on December 10, 2007. The trial court reasoned that because Dr. Felo's name was given to appellant during discovery, appellant was not "in any way prevented from interviewing Dr. Felo prior to, or during, trial in this matter."

**{¶17}** On appeal, appellant contends that the testimony of Dr. Felo is newly discovered because "there was no indication in the discovery provided that Dr. Felo had

any relevant evidence to provide." The record reflects that appellant was provided with Dr. Felo's name and contact information at the Cuyahoga County Coroner's Office on December 10, 2007, five months before trial. Additionally, Dr. Frank P. Miller, the Cuyahoga County Coroner, testified at trial that Dr. Felo was in the autopsy room from "beginning to end" and was the autopsy's supervising physician. Appellant was afforded ample opportunity to inquire into Dr. Felo's opinion regarding Braydon's injuries and cause of death. Appellant does not offer any evidence to support his argument that Dr. Felo's opinion could not have been obtained within the 120-day period, except that he did not know Dr. Felo had any relevant evidence to provide. Accordingly, the trial court did not err in overruling appellant's motion for a new trial once it properly concluded that appellant failed to demonstrate by clear and convincing proof that he was unavoidably prevented from discovering Dr. Felo's testimony.

{¶18} Even if we were to assume that appellant could not, with reasonable diligence, have discovered Dr. Felo's opinion testimony before trial, or within 120 days thereafter, there is not a strong possibility that Dr. Felo's testimony would change the result of a new trial. Appellant should only be allowed a new trial if the newly-discovered evidence discloses a strong probability that it will lead to a different result. In this case, the newly-discovered evidence appellant relies on is an affidavit in which his counsel asserts that Dr. Felo, if called as a defense witness at a new trial, would testify to Braydon having suffered from a "crushing type injury." Specifically, counsel's affidavit states:

> I then specifically questioned the doctor as to whether one strike would cause these three fractures. He answered that one strike would not cause these three fractures and, instead, 'they were more likely the result of a crushing type impact than a strike.' * * *

7

He used the photograph to explain that had the fractures been caused by a strike as opposed to a crush, he would have expected to see evidence on the child within the photography. He explained that he saw no such evidence.

{¶19} Appellant contends that Dr. Felo's possible testimony of Braydon having suffered from a "crushing type" injury would constitute newly-discovered evidence that has a strong probability of leading to a different conclusion, if a new trial were granted. However, three experts testified at trial, and all agreed that due to the severity of the injuries, they were inconsistent with a single strike. Dr. Frank P. Miller, the Cuyahoga County Coroner, testified at trial that Braydon's injuries were consistent with a crushing-type injury. On examination, Dr. Miller was asked by the prosecutor whether he would "say that this injury was a crushing or a slamming injury? Would you agree with that?" Dr. Miller responded: "That is consistent with the injuries sustained, yes." The prosecutor then asked: "Okay. And it was - - and I believe I heard you say that this was not by a hand, you ruled that out; is that correct?" Dr. Miller responded: "I have not ruled it out, but it's extremely unlikely to be resulting from a hand." Furthermore, Dr. Robinson, a pediatric neurosurgeon at Rainbow Babies and Children's Hospital, testified that the injuries were most likely not caused by a single event. Specifically, Dr. Robinson testified that Braydon's injuries were "markedly out of proportion" with those expected from an adult tripping with a baby in his arms and falling down on top of the baby. Additionally, Dr. Robinson testified that Braydon's injuries were "completely out of proportion" with a person hitting the baby with his hand. On cross-examination, Dr. Robinson testified that "[Braydon] was violently assaulted. This is not like shaking, trying to get him awake or a little gentle slap. He was - - his head impacted against something hard to get those fractures and he had significant injury." When asked by

8

appellant's counsel "how many times was this child struck," Dr. Robinson responded, "I imagine he was struck many times." The testimony of Dr. Felo would be merely cumulative to that of the other medical experts; it would not create a strong probability of a different result if appellant was granted a new trial. Rather, the testimony of the three experts that testified at appellant's trial is consistent with the possible testimony of Dr. Felo. Appellant's theory that Braydon's injuries were more likely the result of a crushing-type impact than a strike was already presented by medical experts.

{¶20} Furthermore, in addition to the forensic evidence, the jury was able to rely on other evidence in convicting appellant. The jury had before it appellant's own statements regarding the cause of Braydon's injuries and cause of death. Appellant admitted to hitting Braydon before allegedly falling on him. In light of all the evidence, the trial court properly overruled appellant's Crim.R. 33 motion for the reasons set forth herein. Accordingly, appellant's first, second, and third issues are without merit.

{¶21} Under his fourth issue, appellant asserts, in the alternative, that he is entitled to have his murder conviction modified to reckless homicide pursuant to Crim.R. 33(A)(4) and R.C. 2945.79(D).

{¶22} Crim.R. 33(A) states, in pertinent part:

> A new trial may be granted on motion of the defendant for any of the following causes affecting materially his substantial rights:
>
> * * *
>
> (4) That the verdict is not sustained by sufficient evidence or is contrary to law. If the evidence shows the defendant is not guilty of the degree of crime for which he was convicted, but guilty of a lesser degree thereof, or of a lesser crime included therein, the court may modify the verdict or finding accordingly, without granting or ordering a new trial, and shall pass sentence on such verdict or

finding as modified[.]

{¶23} Similarly, R.C. 2945.79 provides:

A new trial, after a verdict of conviction, may be granted on the application of the defendant for any of the following causes affecting materially his substantial rights:

* * *

(D) That the verdict is not sustained by sufficient evidence or is contrary to law; but if the evidence shows the defendant is not guilty of the degree of crime for which he was convicted, but guilty of a lesser degree thereof, or of a lesser crime included therein, the court may modify the verdict or finding accordingly, without granting or odering a new trial, and pass sentence on such verdict or finding as modified, provided that this power extends to any court to which the cause may be taken on appeal[.]

{¶24} Appellant argues that "the record is completely void of any admission, trace, or other forensic evidence that [appellant] struck this child." As such, appellant believes his conviction should be modified because there was not sufficient evidence to show that appellant acting knowingly. The state's witnesses testified that Braydon died from non-accidental blunt force trauma. Appellant's counsel's affidavit does not contend that Braydon's death was accidental, only that one strike would not cause the injuries observed during the autopsy and that the injuries "were more likely the result of a crushing type impact than a strike." There was sufficient evidence introduced at trial for the jury to convict appellant of murder. Thus, the facts presented do not establish that appellant is entitled to a modification of the offense for which he was convicted or of his sentence.

{¶25} Accordingly, appellant's fourth issue is without merit.

{¶26} For the foregoing reasons, appellant's sole assignment of error is not well taken. The judgment of the Ashtabula County Court of Common Pleas is affirmed.

DIANE V. GRENDELL, J., concurs with a Concurring Opinion,

COLLEEN MARY O'TOOLE, J., dissents with a Dissenting Opinion.

_____

DIANE V. GRENDELL, J., concurs with a Concurring Opinion.

{¶27} I concur in the majority's decision, affirming the judgment of the trial court, and its holding that Rice's Motion for a New Trial was properly overruled. I write separately to clarify an important point.

{¶28} The writing judge states that "Crim R. 33 should not be 'interpreted so technically as to prevent an untimely motion that does not specifically request leave,'" supporting this contention with citations to cases from two other districts. *Supra* at ¶ 13. Such language is unnecessary, and the proposition advanced by the cited cases does not appear to be relevant here. As the opinion notes, Rice filed a Motion for Leave to File a Motion for New Trial. It is unwarranted and improper, then, for this court to adopt a position on whether the failure to formally request leave should prevent a party from pursuing a motion for a new trial. "[O]ur duty is 'to decide actual controversies between parties * * * and to avoid the imposition by judgment of premature declarations or advice upon potential controversies.'" (Citation omitted.) *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124, ¶ 22. *See also Cascioli v. Cent. Mut. Ins. Co.*, 4 Ohio St.3d 179, 183, 448 N.E.2d 126 (1983) (when the facts of the case are unrelated to the legal proposition advanced, no holding should be reached on the issue).

11

**{¶29}** Regarding the necessity of seeking leave prior to filing a motion for a new trial, this court has held on multiple occasions that an "appellant's failure to seek leave from the court to file his [untimely motion for a new trial] is fatal." *State v. Schrock*, 11th Dist. Lake No. 2004-L-056, 2005-Ohio-4040, ¶ 11; *State v. Olcese*, 11th Dist. Portage No. 2010-P-0045, 2011-Ohio-2456, ¶ 48 (Since the appellant filed his merit motion without seeking leave of court, "he failed to comply with the necessary procedural steps set forth in Crim.R. 33(B). As a result, the trial court properly overruled his motion for a new trial.").

**{¶30}** With the foregoing reservations, I concur in the majority's judgment.

_____

COLLEEN MARY O'TOOLE, J., dissents with a Dissenting Opinion.

**{¶31}** I respectfully dissent.

**{¶32}** The majority holds that the trial court properly overruled appellant's motion for new trial without an evidentiary hearing. For the following reasons, I disagree.

**{¶33}** Appellant is serving a 15-year to life sentence for the murder of his four-month-old son. Appellant claims that he never meant to harm his baby boy and that he merely tripped and fell onto his son. Thus, appellant is pleading actual innocence which should never be ignored. Actual innocence claims may be properly raised in a motion for new trial. *State v. Byrd*, 145 Ohio App.3d 318, 330-331 (1st Dist.2001).

**{¶34}** The record before this court reveals that appellant raises a legitimate assertion which should not be "brushed off," given how serious and destructive the charges are in this case. In fact, appellant points to newly discovered evidence

12

supporting his claim. Specifically, appellant argues that the opinion testimony of Dr. Felo, the supervising forensic pathologist, is newly discovered evidence. Although Dr. Felo was identified as a potential state's witness, there is no indication included in the discovery that Dr. Felo had any relevant evidence to provide and, thus, was not called to testify at trial. The autopsy protocol shows the signature of "Amanuel Daniachew, M.D./j.a.f." as being the signature of the pathologist. It was not until trial that the "j.a.f." designation was explained as being the initials of Dr. Felo. In fact, Dr. Daniachew did not sign the protocol, but rather, Dr. Felo signed Dr. Daniachew's name alongside of Dr. Felo's initials.

{¶35} Prior to the filing of the motion for new trial, Dr. Felo was interviewed by appellant's counsel. Due to an office policy of the coroner, there is no affidavit of Dr. Felo's statement or opinion. According to defense counsel, if there were a hearing, Dr. Felo would testify that the baby's skull fractures "are more likely the result of a crushing type occurrence than a more typical striking type occurrence," which lends credibility to appellant's innocence claim that he merely tripped and fell onto his infant son. This writer stresses that the exact force could not be identified due to the lack of physical bruising. I further stress that this matter was never prosecuted as a shaken baby case.

{¶36} Based on the above, there is a strong probability that Dr. Felo's testimony would change the result if a new trial were granted. Thus, I believe the trial court erred in deciding appellant's motion for new trial without Dr. Felo's testimony. The testimony, if believed, would establish actual innocence. Such evidence may not be discredited on its face. *State v. Green*, 7th Dist. Mahoning No. 05 MA 116, 2006-Ohio-3097, ¶26, citing *State v. Wright*, 67 Ohio App.3d 827, 831 (2d Dist.1990). Faced with such

13

evidence, appellant, at a minimum, must be afforded a hearing to present Dr. Felo's testimony. *Green* at ¶26, citing *Wright* at 831-832.

{¶37} In the interests of justice, a small accommodation that appellant is asking for, i.e., a hearing to look into new evidence, is warranted. Stated differently, an hour's time of the court in order to validate why appellant is in prison is not too much to ask. This case involves a small baby who could not talk, i.e, "voiceless." Based on the facts presented, it behooves our justice system to afford appellant a hearing. I believe we owe it not only to appellant, who is claiming actual innocence, but to the taxpayers as well who are paying for appellant's prison sentence for the next 15 years to life as it costs over $23,000 per year to house each inmate in Ohio.

{¶38} In addition, it is noteworthy to point out an article recently published in the March/April 2014 Ohio State Bar Association Member Magazine, *Ohio Lawyer*, Volume 28, No. 2. According to that article, which cited to exonerationregistery.org, last year broke a record in the American justice system by producing the highest number of exonerations ever recorded – 87. Nearly one-third (27) of the 87 exonerations in 2013 revealed that no crime ever actually occurred. Such may be the case in the instant matter as well.

{¶39} Based on the foregoing, I believe that appellant has established, at the very least, an entitlement to an evidentiary hearing on his motion, and that the trial court, in failing to conduct such a hearing, abused its discretion.

{¶40} Thus, this writer believes appellant's first, second, and third issues are with merit, and that his fourth issue, in which he asserts, in the alternative, that he is

entitled to have his murder conviction modified to reckless homicide, need not be addressed at this juncture.

{¶41} For the foregoing reasons, I believe appellant's sole assignment of error is well-taken. Therefore, I would reverse the trial court's judgment and remand the matter for further proceedings.

{¶42} I respectfully dissent.